FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2013 MAR -6  AM 8: 28

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

ADVANTUS, CORP.,
a Florida corporation,

        Plaintiff,

vs.

T2 INTERNATIONAL, LLC,
a Missouri limited liability company,

        Defendant.

_____/

**Case No.**
3:13-CV-240-J-99MMH-TEM

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Advantus, Corp. ("Advantus") sues Defendant T2 International, LLC ("T2 Intl.") for federal trademark and patent infringement and alleges as follows:

### Jurisdiction, Venue and Parties

1.     Advantus is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Jacksonville, Florida. Advantus is a manufacturer and distributor of products in the office, craft and hobby, industrial supply market, mass market and specialty markets, and since 2010, has manufactured and sold high-end, high quality recreational pool and water floats.

2.     On information and belief, T2 Intl. is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located in Mooresville, North Carolina. T2 Intl. is a self-described "product development company" and is a competitor of Advantus to the extent that it manufactures and sells pool and water floats.

3.     Advantus sues T2 Intl. for claims arising under 15 U.S.C. § 1114, 15 U.S.C. §1125, and 35 U.S.C. § 271. This Court therefore has subject matter jurisdiction pursuant to 15

U.S.C. § 1121 (as this action asserts claims under the Lanham Act), 28 U.S.C. § 1338(a) (as this complaint asserts claims of enforcement as to a federal patent and trademark), and 28 U.S.C. § 1331 (as this case presents federal questions for the Court to resolve).

4.    This Court has personal jurisdiction over T2 Intl. in that T2 Intl. is a Missouri corporation whose principal place of business is North Carolina, and T2 Intl. has sufficient minimum contacts with the State of Florida.  More specifically, T2 Intl. is regularly engaged in selling products within the State of Florida to include the acts complained of herein, and T2 Intl. has harmed Advantus in the State of Florida by placing infringing products into the stream of commerce with the knowledge or understanding that such products are sold in the State of Florida, including in this district.  Indeed, as discussed more particularly below, Advantus discovered T2 Intl.'s infringement while one of Advantus' corporate officers was shopping at a club style, members only, retail store in Jacksonville, Florida.  T2 Intl. has purposely availed itself of doing business in the State of Florida and the claims asserted herein against T2 Intl. arise from the activities of T2 Intl. in Florida.  As such, although unnecessary given the pure federal questions at issue, Florida's long-arm statute, Section 48.193, Florida Statutes, would also be satisfied.

5.    Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2).

### General Allegations

#### Advantus owns the Trademark "Floating Luxuries®" and the "Buoyant Cushion Patent"

6.    In 2009, while staying at a resort in South Florida, Advantus' president discovered a Floating Luxuries pool float.  It was unique among the pool floats he had previously seen inasmuch as, at that time, pool floats were constructed of either foam-like material or inflatable vinyl.  Comparatively, Floating Luxuries pool floats are functionally unique, and they

2

have the appearance, comfort and durability of high quality premium products, using Sunbrella® marine-grade fabric on the top surface (which fabric is both resistant to water and to fading from ultraviolet radiation), are stuffed with high density, high count virgin styrene beads with a mesh bottom, float in conformance with the user's body contours, and can be easily removed from the pool without water absorption or weight gain.

7.      Advantus investigated the product and discovered that Floating Luxuries was a trademark and that a patent was pending on the technology.  Advantus further investigated whether there were any comparable products already in the market in competition with the Floating Luxuries buoyant cushion type floats.  While there were numerous pool floats being sold, some more expensive than others, Advantus discovered that there was nothing on the market comparable to the Floating Luxuries buoyant cushion type floats.

8.      Following up to its due diligence, Advantus commenced to acquire the Floating Luxuries federally registered trademark and the patent pending on the buoyant cushion technology.

9.      On December 28, 2009, Advantus acquired valuable intellectual property rights via the Trademark and Patent License Agreement at **Exhibit "A"** (the "License").  Under the License, Advantus acquired the exclusive rights of the trademark Floating Luxuries®, Registration No. 4117524. A duplicate of the Floating Luxuries® federal trademark registration is attached at **Exhibit "B."**  Advantus also acquired through the License, the exclusive rights to the then pending patent application from which it could manufacture the Floating Luxuries® product line.  The United States Trademark and Patent Office thereafter approved the patent application, and Advantus is the exclusive licensee of United States Patent 8,167,672 B2 (attached as **Exhibit "C"**)(the "Buoyant Cushion Patent").

3

10. The genius of the Buoyant Cushion Patent, at its simplest and that which distinguishes it from all prior art, is the combination of a styrene bead filler (which does not absorb water), a mesh bottom to allow the ingress and egress of water, and a high quality marine-grade fabric top coating. Through this combination, the Floating Luxuries® pool and water floats are as aesthetically pleasing and durable just as are awnings and other marine grade products such as bimini tops and boat covers used on virtually every type of boat in the market. Nonetheless, because of the styrene beads and mesh bottoms, they are comfortable while still flexible and lightweight, do not gain water weight when removed from the water, and do not have a risk of mold or mildew growth.

11. Advantus has continuously been the exclusive licensee of the Buoyant Cushion Patent and the Floating Luxuries® trademark at all times material.

**Advantus Makes Floating Luxuries® a Premier and
Successful Brand of High End Luxury Pool Floats**

12. Since acquiring the Floating Luxuries® brand, Advantus has invested approximately $750,000 in marketing the product line and has successfully manufactured and sold luxury pool floats, and related products, derived from the Buoyant Cushion Patent, including the King Kai, Kai, Kai Infinity, Kai Water Hammock, and Kai Seat Lounge, all of which it markets and sells under the trademark Floating Luxuries®. Advantus has sold this product line to resorts, retailers, direct sales to the public, and catalogue re-sellers, having even successfully been featured on the coveted front cover of a Frontgate catalogue.

13. Advantus, and its Licensor, were the first entities to use or trademark Floating Luxuries® in association with the sale of high-end high quality pool and water floats. As a result of Advantus' continued sale of luxury pool and water floats under the Floating Luxuries® brand

since 2010, the trademark has become widely known and Advantus has become identified in the public mind as the manufacturer of the products to which the trademark applies.

14.     As a result of the care and skill by Advantus in producing the Floating Luxuries® product line, it has developed a well-deserved reputation for excellence in durability and craftsmanship. Specifically, Advantus uses a high quality marine grade Sunbrella® fabric for the top of each float, a firm high quality mesh for the bottom, high quality, small size (for comfort) styrene beads for the stuffing, and strong and durable stitching for the seams in manufacturing these products. Advantus has grown Floating Luxuries® from $10,000 in sales by its prior owner in 2009, to $1,700,000 in sales in 2012.

## T2 Intl.'s Infringement

15.     In 2010, T2 Intl.'s president visited an Advantus trade show booth and admired the Floating Luxuries® product line. Advantus disclosed the pending patent application to T2 Intl.'s president at that time.

16.     Advantus recently discovered that T2 Intl. is marketing for sale within the United States, a pool float that T2 Intl. calls the "Luxury Lounger." Specifically, Advantus personnel observed the Luxury Lounger for sale at a club style, members only, retailer ("Big Box") in Jacksonville, Florida in January 2013.

17.     T2 Intl. does not have a registered trademark for "Luxury Lounger" and this product did not exist prior to the fourth quarter of 2012.

18.     Prior to January 2013, Big Box and Advantus were negotiating about the possibility of Advantus selling the Floating Luxuries® product line into Big Box.

5

19.     Big Box pursued these sales discussions during 2011 and 2012 and expressed substantial interest in purchasing and selling various Floating Luxuries® products to its retail club members.

20.     Big Box wanted to resell Advantus' Floating Luxuries® products at a margin of between 10% to 14%.  Advantus steadfastly refused to authorize the resale of certain of its products to Big Box if, by Advantus' calculation, the resulting retail price would hurt the non-club retailers and cataloguers to whom Advantus sells the products.  Advantus mandated this condition because sales of certain products to Big Box of the Floating Luxuries® under such circumstances would have caused all of the retailers and cataloguers to whom Advantus was already selling the products to cease buying Floating Luxuries® products.

21.     Moreover, due to the high cost of the material components for the Floating Luxuries® product line, the least expensive solid surface float type product Advantus has, the Kai Infinity, had a retail sales price of about $129.95.  Advantus could not manufacture certain Floating Luxuries® products of the same quality with a production cost that allowed Advantus to sell to Big Box at its desired price point or at an acceptable retail price to Advantus.

22.     Several weeks preceding the filing of this complaint, a corporate officer of Advantus, a Big Box club member, was shopping in a Big Box store and discovered Big Box selling the T2 Intl. Luxury Lounger. The Luxury Lounger is a buoyant cushion float which, just like the patented Floating Luxuries® floats, has a water resistant fabric top coating, a mesh bottom to allow the ingress and egress of water, and styrene beads which create floatation for the device but which does not itself allow for the absorption of water.  The Luxury Lounger is neither patented, nor does it appear that T2 Intl. has applied for a patent for it.  Therefore, it appears that T2 Intl. is now selling to Big Box, and potentially others, a product that infringes on

6

the Buoyant Cushion Patent, specifically infringing upon independent claim of patent number 1 and dependent claims of patent numbers 2, 3, 4, 8, 10, 11, 12 and 16.

23.    In addition to infringing upon Advantus' patent rights, the "Luxury Lounger," by creating its own mesh bottom, fabric top pool float with the name Luxury Lounger and appearing to copy the very essence of the uniqueness of the Floating Luxuries® products, infringes upon Advantus' trademark rights and registration of Floating Luxuries® and in fact creates confusion as to the source of origin of the Luxury Lounger product.

24.    The Luxury Lounger by T2 Intl. is a lower quality knockoff as compared to the Floating Luxuries® products.    Specifically, where Advantus uses Sunbrella® marine grade fabric for the top of its Floating Luxuries® product lines, T2 Intl. uses a far less expensive (and less durable) furniture grade Sunbrella® fabric.    Further, the more expensive marine grade fabric that Advantus uses is more resistant to a wet environment, to salt water, and the inherent deleterious effects of water than is the less expensive furniture grade fabric that T2 Intl. is using for its Luxury Lounger.    As a result of the lower material costs, T2 Intl. can sell at a significantly lower price point but is also selling a much less durable product.

25.    Additionally, the cost of styrene beads is the same regardless of the size of the bead.    Thus, the smaller bead size (used by Advantus) has the same manufacturing cost as a larger approximately four millimeter styrene bead (used by T2 Intl.) due to the amount of product being the same, and air being used to make the bead bigger.    Thus, by using larger styrene beads in the Luxury Lounger, T2 Intl. is able to also lower production costs by using fewer beads for the same space.    However, using fewer but larger styrene beads in the same amount of space means that there is less comfort and less buoyancy.

7

26.     T2 Intl., by making a less expensive but also a lower quality product, sells to Big Box at a price cheap enough for Big Box to sell at a retail price point of $89.99. By way of comparison, Advantus' Floating Luxuries® Kai Seat has a price point of $129.00 despite its smaller size than the Luxury Lounger.

27.     The Luxury Lounger, as a cheap knockoff of the Floating Luxuries® line, creates two significant harms to Advantus. First, it creates confusion as to origin for consumers shopping at retailers and cataloguers. Further, because of the Luxury Lounger's outward appearance and packaging claims, it appears to be part of the Floating Luxuries® product line, ostensibly, but not actually using the same grade of Sunbrella® fabric, while priced below comparable Floating Luxuries® brand products, which harms and unfairly competes with both Advantus and its retailers as it diverts consumers for Floating Luxuries® products and sells them a product that will not be as durable and comfortable as a Floating Luxuries®.

28.     In addition, by making the less comfortable, less durable, less buoyant competing product, with confusion as to origin, customers dissatisfied with the Luxury Lounger will inevitably not buy Advantus' more expensive, more comfortable, more durable Floating Luxuries® products and are even likely to discourage others from buying Floating Luxuries® products. This will dilute and harm Advantus' mark and goodwill in Floating Luxuries®, a product line designed for the high-end, high quality, pool and water float market.

29.     Moreover, T2 Intl.'s use of the term "Luxury Lounger" to market and sell a substantially similar product, while lower in quality, in competition with Advantus' Floating Luxuries® product line is calculated to trade off of or obtain the goodwill attributable to Advantus' higher quality products.

8

30.     On January 25, 2013, counsel for Advantus sent a letter to T2 Intl. demanding that it, among other things, immediately cease and desist from infringing on the Buoyant Cushion Patent. A duplicate of the January 25, 2013 cease and desist letter is attached at **Exhibit "D."**

31.     On February 8, 2013, counsel for Advantus sent counsel for T2 Intl. a second letter additionally demanding, among other things, that T2 Intl. immediately cease and desist in using the trademark or moniker "Luxury Lounger" to market its floating lounger.  A duplicate of the February 8, 2013 supplemental cease and desist letter is attached at **Exhibit "E."**

32.     As of the filing of this complaint, T2 Intl. has failed to comply with the terms and conditions of either the January 25th or February 8th cease and desist letters thereby resulting in Advantus instituting this litigation.

33.     The exact amount of the profits made by T2 Intl. as a result of its infringement of Advantus' Buoyant Cushion Patent is unknown and cannot be ascertained without an accounting.

34.     Similarly, the exact amount of profits made by T2 Intl. as a result of its infringement of the Floating Luxuries® trademark, or a colorable imitation of same, is unknown and cannot be ascertained without an accounting.

### COUNT I
### (Trademark Infringement)

35.     Advantus sues T2 Intl. for trademark infringement pursuant to 15 U.S.C. § 1114.

36.     Advantus reincorporates paragraphs 1 through 34 as if fully set forth herein.

37.     T2 Intl. is using the name Luxury Lounger in commerce in connection with the sale, offering for sale, distribution, and advertising of a pool float that is substantially similar in design to Advantus' Floating Luxuries® product line.

38.     Luxury Lounger is a colorable imitation of the Floating Luxuries® trademark and products.

39.     T2 Intl.'s use of Luxury Lounger to market its pool float in this regard is likely to cause confusion, or to cause mistake, or to deceive, and does in fact deceive as to the origin of its product with Advantus' products marketed and sold under the name Floating Luxuries®. In this regard, T2 Intl.'s products copy all of the features which made the Floating Luxuries® a highly-regarded, unique pool float with an excellent reputation.

40.     In that this case involves directly competing goods, Luxury Lounger is sufficiently similar to Floating Luxuries® that consumer confusion can be expected to occur in the future.

41.     T2 Intl. has actual knowledge of Advantus' products, and even sold to the very retailer (Big Box) at the price point Big Box wanted, at a time when Advantus was negotiating with Big Box and could not sell the higher-priced genuine article at the same price point. T2 Intl.'s infringement therefore is, and at all times material has been, intentional.

**WHEREFORE**, Plaintiff Advantus, Corp. requests this Court grant the following relief against Defendant T2 International, LLC:

(i)     T2 Intl. and its employees and agents be enjoined during the pendency of this action, and permanently afterwards, from selling, or offering for sale, in the United States any pool float bearing the mark "Luxury Lounger" or any imitation of Advantus' trademark:

(ii)    T2 Intl. account for and pay over to Advantus all profits realized by T2 Intl. from the sales of the Luxury Lounger product or any imitation of Advantus' trademark, and/or Advantus' lost profits from the diverted sales;

(iii)   Advantus be awarded treble damages against T2 Intl. in accord with 15 U.S.C. § 1117;

10

(iv)     Advantus receive its costs to include its attorneys' fees in accord with 15 U.S.C. § 1117; and

(v)      Advantus be granted such other and further relief as may be just and proper.

**COUNT II**
**(Trademark Infringement – Passing Off)**

42.     Advantus sues T2 Intl. for passing off pursuant to 15 U.S.C. § 1125.

43.     Advantus reincorporates paragraphs 1 through 34 as if fully set forth herein.

44.     Advantus has expended substantial sums to acquire the exclusive rights to the registered trademark Floating Luxuries®, as well as the exclusive rights to make, use, and sell products based on the Buoyant Cushion patent.

45.     T2 Intl.'s use of the name Luxury Lounger to market and sell a substantially similar, but inferior quality product, creates a misrepresentation among consumers that the Luxury Lounger is a high quality Floating Luxuries® product.

46.     Consumers who purchase the Luxury Lounger, which is sold at a price point substantially lower than comparable Floating Luxuries® floats, will potentially cost Advantus a sale, purchase an inferior product likely to dissatisfy, cause dissatisfaction with Advantus' retailer and cataloguer clients who cannot compete with the price points, and Advantus will as a result suffer a dilution and reduction of the value of its trademark.

**WHEREFORE**, Plaintiff Advantus, Corp. requests this Court grant the following relief against Defendant T2 International, LLC:

(i)      T2 Intl. and its employees and agents, be enjoined during the pendency of this action, and permanently afterwards, from selling, or offering for sale, in the United States any pool float bearing the mark Floating Luxuries®, or any imitation of Advantus' trademark;

11

(ii)     T2 Intl. account for and pay over to Advantus all profits realized by T2 Intl. from the sales of the Luxury Lounger product, or any imitation of Advantus' trademark, and/or Advantus' lost profits from the diverted sales;

(iii)    Advantus receive its costs to include attorneys' fees incurred in this action; and

(iv)    Advantus be granted such other and further relief as may be just and proper.

## COUNT III
## (Patent Infringement – 35 U.S.C. § 281)

47.     Advantus sues T2 Intl. for patent infringement pursuant to 35 U.S.C. §§ 271 and 281.

48.     Advantus reincorporates paragraphs 1 through 34 as if fully set forth herein.

49.     T2 Intl. is manufacturing and selling the Luxury Lounger, which product infringes numerous of Advantus' claims set forth within the Buoyant Cushion Patent.

50.     T2 Intl.'s infringement is occurring during the term of the Buoyant Cushion Patent.

51.     T2 Intl. does not have authority to use the Buoyant Cushion Patent.

52.     T2 Intl. continues to manufacture and sell the infringing product despite actual knowledge of Advantus' claims of such patent and its violation is intentional.

**WHEREFORE,** Plaintiff Advantus, Corp. requests this Court grant the following relief against Defendant T2 International, LLC:

(i)     A preliminary injunction enjoining T2 Intl. and its employees and agents from making, selling, using, and offer for sale its pool floats, which are infringements of Advantus' Buoyant Cushion Patent, and from engaging in patent infringement as set forth in this Complaint and a final injunction to run the length of Advantus' rights in the Patent;

(ii)     An order requiring T2 Intl. to account for and pay Advantus damages for patent

infringement, including interest on damages, to include treble damages in accord with 35 U.S.C.

§ 284;

(iii)    An order granting Advantus costs and reasonable attorneys' fees be assessed

against T2 Intl., in accord with 35 U.S.C. § 285; and

(iv)    Advantus be granted such other and further relief as may be just and proper.

### Demand for Jury Trial

Advantus requests trial by jury on all issues so triable.

**DATED** this 5th day of March, 2013.

By: _____

ALAN S. WACHS
Florida Bar No. 980160
alan.wachs@arlaw.com
CHRIS T. HARRIS
Florida Bar No. 107115
chris.harris@arlaw.com
KYLE C. JACOBS
Florida Bar No. 59062
kyle.jacobs@arlaw.com
**Adams and Reese LLP**
501 Riverside Avenue, 7th Floor
Jacksonville, FL  32202
(904) 355-1700
(904) 355-1797 (facsimile)

Attorneys for Plaintiff Advantus, Corp.

3077.01100/9